# United States Court of Appeals
## For the First Circuit

No. 13-1963

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN E. NARVÁEZ-SOTO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Selya and Lipez,
Circuit Judges.

Jonathan G. Mermin and Preti, Flaherty, Beliveau & Pachios, LLP on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, on brief for appellee.

December 3, 2014

**SELYA, Circuit Judge.** Defendant-appellant Edwin E. Narváez-Soto challenges his upwardly variant sentence. After careful consideration, we affirm.

Inasmuch as his appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. See United States v. Cintrón-Echautequi, 604 F.3d 1, 2 (1st Cir. 2010); United States v. Santos, 357 F.3d 136, 138 (1st Cir. 2004). On December 12, 2011, the defendant and an accomplice spotted a woman talking on a cellphone in a parking lot, followed her car, and eventually carjacked it. The two men abducted the woman, stole her belongings, and — over the course of at least an hour — took her to two banks to make cash withdrawals. All the while, the men terrorized their victim with gory tales of their previous maraudings.

The victim's nightmare worsened when, after the withdrawal of funds was accomplished, the defendant left his accomplice at a restaurant and departed with the victim and her car. Following some exploration, the defendant found a secluded spot that was to his liking. There, he ordered the woman to undress. He then raped her. Later, the defendant allowed the

victim to call her father to reassure him (falsely) that everything was fine.[1]

Once the defendant resumed driving, a police cruiser became interested in the vehicle and started trailing it, lights flashing. Although the defendant stopped the car for a moment, he changed his mind and sped away (almost hitting the police officers). The officers fired several shots at the runaway car, but did not stop it. After a chase, the defendant abandoned the vehicle, left his victim behind, and fled on foot.

In due course, the defendant turned himself in to federal authorities. A federal grand jury sitting in the District of Puerto Rico indicted the defendant on two counts. Count 1, which carried a maximum sentence of 25 years, charged carjacking resulting in serious bodily injury. See 18 U.S.C. § 2119(2). Count 2, which carried a mandatory minimum and consecutive sentence of 7 years and a maximum sentence of up to life imprisonment, charged carriage of a firearm during and in relation to a crime of violence. See id. § 924(c)(1).

After some preliminary skirmishing (not relevant here), the defendant entered a straight guilty plea to both counts. Following customary practice, the district court directed the preparation of the PSI Report.

---

[1] The carjacking had interrupted the victim's telephone conversation with her boyfriend, so her family and friends knew that something was amiss.

For count 1, the PSI Report started with a base offense level of 20. See USSG §2B3.1(a). It then recommended a series of adjustments: a four-level upward adjustment because the victim sustained serious bodily injury in the form of sexual assault, see id. §2B3.1(b)(3)(B); a four-level upward adjustment because the victim was abducted to facilitate the commission of the offense, see id. §2B3.1(b)(4)(A); a two-level upward adjustment because the offense involved a carjacking, see id. §2B3.1(b)(5); a two-level upward adjustment because the defendant recklessly created a substantial risk of death or serious bodily injury while fleeing from the police, see id. §3C1.2; and a three-level downward adjustment for acceptance of responsibility, see id. §3E1.1. Cumulatively, these adjustments brought the offense level to 29. Coupled with the defendant's criminal history category (III), this offense level yielded a guideline sentencing range (GSR) of 108-135 months.

With respect to count 2, the PSI Report noted that the offense of conviction was "precluded from the guidelines" and carried a 7-year mandatory minimum sentence. Moreover, any sentence imposed on count 2 had to run consecutively to whatever term of imprisonment was imposed on count 1.

At the disposition hearing, no one objected to the PSI Report, and the district court adopted the guideline calculations contained therein. The government argued for an above-the-range

sentence.  In response, defense counsel "implore[d] the [c]ourt to set [its] feelings and passions aside" and sentence the defendant at or near the upper end of the GSR.  Following a thorough explanation of its reasoning, the court varied upward and imposed a 240-month term of immurement on count 1, to be followed by a 120-month term on count 2.  This timely appeal ensued.

On appeal, the defendant challenges both the procedural and substantive reasonableness of his sentence.  We review sentencing challenges in two steps.  See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).  First, we resolve any procedural questions.  See Gall v. United States, 552 U.S. 38, 51 (2007).  If no procedural error looms, we proceed to address the question of substantive reasonableness.  See id.

With respect to each step of this pavane, we employ the deferential abuse of discretion standard of review.  See Gall, 552 U.S. at 51; Martin, 520 F.3d at 92.  This standard is not monolithic: within it, we review matters of law (including the sentencing court's interpretation and application of the guidelines) de novo and findings of fact for clear error.  See Walker, 665 F.3d at 232.

As the opening salvo in his multifaceted procedural attack on his count 1 sentence, the defendant takes aim at the district court's consideration of Puerto Rico's crime rate in its

sentencing calculus.  He contends that the pervasiveness of crime in a particular community is not a valid sentencing factor.  This contention fails.

What the court actually said during sentencing was that it viewed the defendant's crimes "as much more serious [in Puerto Rico] than if they had occurred in a less violent society."  In weighing the impact associated with a particular crime, a sentencing court may consider the pervasiveness of that type of crime in the relevant community.  See United States v. Santiago-Rivera, 744 F.3d 229, 232-33 (1st Cir. 2014); United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013) (collecting cases).  This proposition follows logically from the fact that "[d]eterrence is widely recognized as an important factor in the sentencing calculus."  Flores-Machicote, 706 F.3d at 23.  Thus, "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the . . . need for deterrence."  Id.  After all, a heightened need for deterrence may well exist in a community where violent crime is running rampant.  See id.

Relatedly, the defendant questions the factual underpinnings of the district court's observations regarding the crime rate in Puerto Rico.  He cites statistical information (in particular, a 2008-2009 crime data report from the Federal Bureau of Investigation) to impugn the court's observation that "in Puerto

Rico crime far exceeds the known limits on the mainland."[2]  In the defendant's view, rape and robbery are no more common in Puerto Rico than in certain other parts of the United States.

The point, however, is not that some other communities may also be plagued with violent crime but, rather, that such crime is a real problem in Puerto Rico.  The very statistics that the defendant cites bear witness to this grim reality.

We add, moreover, that the court's references to the incidence of rape and robbery in Puerto Rico, when read in context, provide scant cause for concern.  The court noted that "[a]rmed carjackings and rapes are, unfortunately, pervasive throughout the island."  Given materials referenced by the court, that statement appears to be true.  In the same vein, the court recounted that 65 carjacking cases were filed in the district court in the 2012 fiscal year.  That estimate has not been challenged.[3]

---

[2] The defendant did not present this data to the district court.  He notes, however, that the same report was cited by this court in Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Sagardia De Jesus, 634 F.3d 3, 6 & n.2 (1st Cir. 2011).

[3] The defendant also takes issue with the court's statement that "Puerto Rico has a homicide rate quadruple the national rate and more than double that of virtually every state."  But even though the court mentioned Puerto Rico's high homicide rate, it did so in the context of relating the pervasiveness of all types of violent crime in Puerto Rico (including carjacking and rape) to the need for deterrence in this case.  We see no abuse of discretion.

We will not paint the lily. Even if certain types of violent crime are more prevalent in other places than the court realized, that does not detract from the court's reasoned determination, predicated on its experience, that the incidence of violent crime — and, particularly, gun-related violent crime — is an acute problem in Puerto Rico. Cf. Martin, 520 F.3d at 92 (acknowledging that sentencing courts possess "cumulative experience garnered through the sheer number of district court sentencing proceedings that take place day by day"). On the record before us, we discern no abuse of discretion in the sentencing court's consideration of Puerto Rico's crime rate in formulating the defendant's sentence.

Next, the defendant asserts that the district court failed to ground the sentence in the nature and circumstances of his offense. Specifically, he argues that the court gave too much weight to impermissible considerations (such as the perceived leniency of Puerto Rico's courts) and relied too little on the individual characteristics of the defendant.

We have recognized that "[i]t is possible for a sentencing judge to focus too much on the community and too little on the individual." Flores-Machicote, 706 F.3d at 24. What happened here, however, does not cross into that forbidden terrain. At the conclusion of the parties' presentations at sentencing, the district court observed, "[o]ther than two child pornography cases

-8-

. . . this is the worst criminal case that I have had." The court proceeded to identify certain aspects of the crime that it found particularly appalling. These included driving the victim to a secluded area devoid of any light, raping her in spite of her verbal protests and physical struggles, and allowing her to telephone her father after the rape (an act that the judge plausibly inferred must have terrorized the victim's family).

As this list of concerns evinces, the sentencing court was troubled by the utter depravity and vicious nature of the defendant's acts. The analytic centerpiece of the court's sentencing rationale was the crime of conviction, and there is no satisfactory footing for a conclusion that community-based considerations either dominated or improperly influenced the fashioning of the sentence.

The defendant's last procedural argument implicates his sentence on count 2. For the first time on appeal, he decries the sentencing court's determination that "Count Two is precluded from the guidelines." He suggests that, under USSG §2K2.4(b), the statutory minimum sentence serves as the guideline sentence for that offense. Thus, his thesis runs, the district court was obliged to explain its reasons for imposing a sentence greater than the mandatory minimum sentence on that count.

Because the defendant did not raise this argument below, our review is for plain error. See United States v. Leahy, 473

F.3d 401, 409-10 (1st Cir. 2007). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

We need not tarry. Even if there was a clear and obvious error — and we doubt that there was — the defendant has failed to demonstrate "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012) (internal quotation marks omitted). The defendant does not point to anything in the record to suggest that the court would have sentenced him any differently absent the purported error. Everything that we have reviewed supports a contrary conclusion: the record indicates that the court would have varied upward on count 2 whether or not it understood the minimum sentence to be the guideline sentence. Indeed, the court at one point stated explicitly that it intended to sentence the defendant outside the GSR on both counts. Considering the totality of the circumstances, we see nothing approaching plain error.

Our determination that no procedural flaws infected the sentencing process brings us to the defendant's claim that his

sentence is substantively unreasonable.[4]  When reviewing the substantive reasonableness of a sentence, "the highly deferential abuse-of-discretion standard remains in full force."  Santiago-Rivera, 744 F.3d at 234.  In undertaking that review, we remain mindful that, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result."  Martin, 520 F.3d at 96.  For any given case, "there is not a single reasonable sentence but, rather, a range of reasonable sentences."  Id. at 92.

Refined to bare essence, the defendant's claim rests on the assertion that the facts on which the district court relied in varying upward were already factored into the guideline sentence and that the court never explained why this case fell outside the heartland.  The first part of this assertion misperceives how sentencing determinations are made.  The guidelines are simply "the starting point and the initial benchmark" for crafting an appropriate sentence.  Gall, 552 U.S. at 49.  As such, a sentencing court is not to presume that the GSR invariably sets the parameters of a reasonable sentence but must "make an individualized assessment based on the facts presented."  Id. at 50.

The "nature and circumstances of the offense" form a salient part of what a sentencing court should take into account.

---

[4] While the defendant's brief is muddled, the focus of this claim centers on the combined effect of the sentences on counts 1 and 2 (a total of 360 months).  Were we to read his claim as directed solely to the count 1 sentence, the result would be the same.

18 U.S.C. § 3553(a)(1). Hence, the court may consider the manner in which the offense was committed even if the underlying conduct already is accounted for by an offense level adjustment. See Walker, 665 F.3d at 233 ("Even though an upward adjustment already had been made for the appellant's 'pattern' of behavior, the atypical extent of this pattern and the aggravating factors allowed the sentencing court to make an upward departure." (internal citations omitted)).

The second part of the defendant's assertion is belied by the record. The sentencing court made an individualized determination. It clearly delineated why the defendant's conduct went well beyond a run-of-the-mill carjacking or firearm possession case. The court noted that the defendant carefully planned the carjacking, recruited an accomplice to facilitate the crime, stalked and hunted down the victim, carjacked and robbed her, abducted her and held her hostage, and raped her. It further noted that the defendant attempted to avoid police intervention, instigated a firefight with the officers and sparked a chase. In addition, the court observed that allowing the victim to call her father after the rape gratuitously immersed family members in his reign of terror. This sordid chain of events distinguished the case from the mine-run and made it a candidate for significant punishment.

-12-

The defendant's next point is no more convincing. He argues that the district court's stated sentencing grounds were neither sufficiently particularized nor sufficiently compelling. This is sheer persiflage.

The district court emphasized the heinous nature of the crime and gave book and verse in support of its appraisal. In summing up, the court said that a substantial upward variance was warranted "to protect the public from further crimes by [the defendant] and to address the issues of deterrence and punishment." The court's reasoning was grounded solidly in the nature and circumstances of the offense and furnished a plausible rationale for its substantial upward variance. The sentence itself produced a defensible outcome: the punishment fit the crime.

Of course, in deciding on an appropriate sentence, a district court has an obligation to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a). This is sometimes called the "parsimony principle." The defendant's sentence, which falls "within the expansive universe of reasonable sentences," United States v. King, 741 F.3d 305, 308 (1st Cir. 2014), does not offend this principle.

We need go no further. For the reasons elucidated above, the sentence is

**Affirmed.**

-13-