# United States Court of Appeals
## For the First Circuit

No. 13-1620

UNITED STATES OF AMERICA,

Appellee,

v.

KERMIT RIVERA-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Edwin E. Leon-Leon on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Tiffany V. Monrose, Assistant United States Attorney, on brief for appellee.

January 20, 2015

**SELYA, Circuit Judge.** Defendant-appellant Kermit Rivera-González challenges his 84-month sentence for a firearms offense. After careful consideration, we affirm.

## I.

### Background

Since this appeal trails in the wake of a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. See United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014); United States v. Del Valle-Rodríguez, 761 F.3d 171, 173 (1st Cir. 2014). Beginning in 2007 and continuing into 2010, the defendant engaged in a conspiracy to distribute controlled substances at various drug distribution points in San Juan, Puerto Rico. In carrying out his role in the conspiracy, he possessed and used firearms.

After a federal grand jury charged the defendant with various drug-trafficking offenses, the government filed a supplemental information containing two additional counts arising out of the defendant's possession, at the time of his apprehension, of four kilograms of marijuana (supplemental count 1) and four firearms (supplemental count 2). Although the defendant initially maintained his innocence, he soon entered into a non-binding plea

agreement (the Agreement) with the government. See Fed. R. Crim. P. 11(c)(1)(B).

Pursuant to the Agreement, the defendant pleaded guilty to count 1 of the indictment (charging him with conspiring to possess with intent to distribute various controlled substances within 1,000 feet of a protected location, see 21 U.S.C. §§ 841(a)(1), 846, 860), supplemental count 1 (charging him with possessing marijuana with intent to distribute, see id. § 841(a)(1)), and supplemental count 2 (charging him with possessing firearms in furtherance of a drug-trafficking offense, see 18 U.S.C. § 924(c)(1)(A)). The remaining five counts contained in the indictment were to be dismissed.

The Agreement made clear the parties' expectation that the guideline sentencing range (GSR) for count 1 would be 108 to 135 months and that the GSR for supplemental count 1 would be 6 to 12 months. These anticipated GSRs were based on the assumption that the defendant would be placed in criminal history category (CHC) I. The parties agreed that, should this assumption materialize, they would jointly recommend a 120-month sentence for count 1 and a concurrent 6-month sentence for supplemental count 1. With respect to supplemental count 2, they agreed to recommend the mandatory minimum 60-month term of immurement, to run consecutively to the sentences on the underlying drug charges. The parties'

recommendation of a 60-month consecutive term for the gun charge was not contingent upon the sentencing court's CHC designation.

Some months after accepting the defendant's guilty plea, the district court received the PSI Report, which grouped the drug charges. See USSG §3D1.2. Using CHC I, the PSI Report set the GSR at 87 to 108 months for the grouped counts. The Report made only a passing reference to the gun charge, noting that the statute of conviction required a minimum 60-month consecutive term of imprisonment. See 18 U.S.C. § 924(c)(1); USSG §2K2.4(b).

At the disposition hearing, the district court, without objection, adopted the guideline calculations limned in the PSI Report. The government acknowledged that grouping had resulted in a lower GSR for the drug counts but nevertheless pressed for the imposition of the previously agreed 120-month sentence on count 1 and a 6-month sentence on supplemental count 1. The district court eschewed the non-binding sentencing recommendations contained in the Agreement and imposed concurrent within-the-range sentences of 96 months on count 1 and 12 months on supplemental count 1.

The court then took up the gun charge. It again turned a deaf ear to the parties' joint recommendation and levied an 84-month sentence on supplemental count 2 to run consecutively to the other sentences.[1] This timely appeal ensued.

---

[1] As contemplated in the Agreement, the district court dismissed the remaining five counts contained in the indictment.

-4-

## II.

## Analysis

On appeal, the defendant abjures any challenge to either the district court's guideline calculations or the sentences imposed on the drug counts. Instead, he focuses with laser-like intensity on the reasonableness (procedural and substantive) of the 84-month sentence for the gun charge.

We review challenges to the reasonableness of a sentence in line with a two-step pavane. See United States v. King, 741 F.3d 305, 307 (1st Cir. 2014); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). We begin by examining allegations of procedural error. See Gall v. United States, 552 U.S. 38, 51 (2007). If no procedural error is found, we then assess the substantive reasonableness of the sentence. See id. In carrying out these tasks, our review is for abuse of discretion. See id.; United States v. Narváez-Soto, ___ F.3d ___, ___ (1st Cir. 2014) [No. 13-1963, slip op. at 5]. Within this rubric, we review conclusions of law de novo and findings of fact for clear error. See Narváez-Soto, ___ F.3d at ___, [slip op. at 5]; United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).

## A.

### Preliminary Matters

Even though the Agreement contained a waiver-of-appeal clause, the defendant's appeal is properly before us. Such a clause only precludes appeals falling within its scope. See Almonte-Nuñez, 771 F.3d at 88; United States v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013). Here, the defendant waived his right of appeal to the extent that he was subsequently "sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions" of the Agreement. The sentence imposed on the gun charge was not in accordance with the terms and conditions of the Sentence Recommendation provisions, which memorialized the parties' joint recommendation of a 60-month term of immurement. Because of this digression from what the parties had proposed, the waiver-of-appeal clause does not bar this appeal.

A few words about a second preliminary matter will help to put our merits discussion in perspective. The statute of conviction provides in pertinent part, with exceptions not relevant here, that any person who possesses a firearm in furtherance of a drug-trafficking crime "shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). This term of imprisonment shall not "run concurrently with any other term of imprisonment imposed on the

-6-

person, including any term of imprisonment imposed for the . . . drug trafficking crime during which the firearm was . . . possessed." Id. § 924(c)(1)(D)(ii).

The general rule is that convictions (like this one) that carry a statutory mandatory minimum term of immurement designed to run consecutively to any sentence on the underlying crime are to be sentenced "independent of the guideline sentence on any other count." USSG §5G1.2(a), cmt. (n.2(A)). Consecutive sentences for violations of 18 U.S.C. § 924(c) are, moreover, to be calculated without regard to chapters three and four of the sentencing guidelines. See USSG §2K2.4(b).

Even so, a mandatory minimum sentence under section 924(c) is not wholly independent of the sentencing guidelines. Rather, the statutory mandatory minimum sentence is deemed to be the guideline sentence.[2] See id. §2K2.4(b); United States v. Millán-Isaac, 749 F.3d 57, 67 (1st Cir. 2014). We hold, therefore, that since a mandatory minimum sentence under section 924(c) is the recommended guideline sentence, a reviewing court should treat any sentence above that statutory mandatory minimum as an upward variance. See, e.g., United States v. Goodrich, 739 F.3d 1091, 1095, 1099 (8th Cir. 2014); United States v. Gantt, 679 F.3d 1240,

---

[2] The guidelines also make clear that if the defendant's conviction for a section 924(c) offense pushes him into career offender status, his GSR would be determined under section 4B1.1(c). See USSG §2K2.4(c). That principle is not implicated here.

1243, 1248 (10th Cir. 2012); <u>United States</u> v. <u>Lucas</u>, 670 F.3d 784, 789, 796-97 (7th Cir. 2012).  We proceed accordingly.

## **B.**

### **Procedural Reasonableness**

The defendant first contends that the district court failed to conduct an adequate individualized assessment of his history and characteristics.  Specifically, he contends that the court did not take into account mitigating factors, such as his relatively crime-free past, his age (33), and the duration of his sentence on the underlying drug counts.

This is whistling past the graveyard.  The record makes pellucid that the court below focused appropriately on the defendant's personal history and characteristics.  With respect to the defendant's particular complaints, we note that the court specifically acknowledged not only that the defendant's criminal record was minimal but also that he was a "good father" and a good family man.  So, too, the court recognized the defendant's age.  It is true that no extensive comment about the defendant's age was made — but none was required.  Age is normally relevant in sentencing only if age-based considerations "are present to an unusual degree," USSG §5H1.1, and distinguish a particular case in a meaningful way (such as when a defendant is either very young or very old).  No such special considerations obtain here.

In a nutshell, the sentencing court indicated its awareness of the defendant's personal history and characteristics. The defendant's real complaint is not that the court overlooked those factors but that it weighed those factors less heavily than he would have liked. But that type of balancing is, within wide limits, a matter for the sentencing court. See United States v. Carrasco-De-Jesús, 589 F.3d 22, 29 (1st Cir. 2009) (holding that a criminal defendant is entitled to a weighing of relevant factors, not to a particular result); United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007) (similar). Those wide limits were not exceeded, or even closely approached, in this instance.

The defendant's claim that the district court disregarded the sentences imposed on the underlying drug charges is made up out of whole cloth. The record offers no reason to doubt that the court took into account the sentences imposed on the underlying drug charges. After all, the sentences on all three counts were imposed at the same time. To cinch the matter, the aggregate period of incarceration portended by the combined sentences — 180 months — is exactly the same as the aggregate period of incarceration jointly recommended by the parties in the Agreement. That smacks of deliberate decisionmaking, not mere happenstance.

Though the defendant's lack of individualization claim is meritless, his challenge to the procedural reasonableness of the sentence has another facet: his asseveration that the sentencing

court erred by increasing the mandatory minimum sentence in a knee-jerk response to the high incidence of crime and illegal firearm use in Puerto Rico and the local judiciary's perceived penchant for leniency in such cases. The defendant maintains that the court placed too much emphasis on these community-based considerations and, thus, overshadowed the appropriate sentencing factors limned in 18 U.S.C. § 3553(a).

We agree with the defendant's premise that a sentencing court's appraisal of community-based considerations does not relieve its obligation to ground its sentencing determination in individual factors related to the offender and the offense. See United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013). A sentencing court may abuse its discretion by focusing "too much on the community and too little on the individual" in imposing a sentence. Id.; see Narváez-Soto, ___ F.3d at ___ [slip op. at 8]. But as we explain below, that is not what happened here.

That the court paid heed to the particulars of the defendant's case is made manifest by its references to his family life, age, education, employment record, absence of mental health issues, drug consumption, and prior brushes with the law. The court also remarked that the defendant, who had been found in possession of four firearms, had no training in their use. Nor did he have any visible means of purchasing them.

Against this tableau, the defendant's asseveration is unpersuasive. While the sentencing court referred to both the high incidence of violent crime in Puerto Rico and to the local courts' tendencies toward leniency in such cases, it did so in connection with the need for deterrence — and deterrence is, of course, a legitimate sentencing goal. See 18 U.S.C. § 3553(a)(2)(B); Flores-Machicote, 706 F.3d at 23.

The short of it is that the district court sentenced the defendant in light of the totality of a myriad of relevant circumstances. Although community-based considerations were a part of this mix, there is no compelling indication that the court gave undue weight to them. Consequently, we reject the defendant's assignment of procedural error.

## C.

### Substantive Reasonableness

This leaves only the defendant's assertion that his sentence on the gun charge is substantively unreasonable. The essence of appellate review for substantive reasonableness is whether the sentence is the product of "a plausible . . . rationale and a defensible result." Martin, 520 F.3d at 96.

The defendant starts by attacking the lower court's sentencing rationale. We glean that rationale primarily from the court's near-contemporaneous oral and written explanations of the sentence. See id. at 93. In evaluating the plausibility of a

discerned rationale, we are mindful that a district court's sentencing portfolio is "broad, open-ended, and significantly discretionary." Id. at 92.

At the disposition hearing, the court noted the prevalence of gun-related crimes in Puerto Rico and the pressing need to deter that kind of misconduct. The court also noted that such gun-related crimes are often committed by persons who, like the defendant, have obtained firearms illicitly and have had no proper training in their use.

Furthermore, the defendant was a drug point owner and enforcer who possessed four firearms in furtherance of those roles. For many drug dealers, guns are tools of the trade. See, e.g., United States v. Acosta-Colón, 741 F.3d 179, 203 (1st Cir. 2013); United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989). The sentencing court's rationale stressed the need for deterrence in a community and in a trade where gun-related crimes run rampant. So viewed, the court's sentencing rationale was plausible. See Flores-Machicote, 706 F.3d at 23; Martin, 520 F.3d at 96.

The defendant next frontally attacks the sentence itself, insisting that it is unreasonably stiff. He points out that the court "exceeded by 24 months" the parties' joint recommendation for a 60-month sentence on the gun charge, "represent[ing] a 40% increase" over the recommended sentence. This drastic upward variance, he says, flouts the parsimony principle, which requires

-12-

that a sentence be "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a); see United States v. Rodríquez, 527 F.3d 221, 228 (1st Cir. 2008).

This argument lacks force. Normally, a sentencing court is not bound by the parties' mutual embrace of a recommended sentence.[3] See, e.g., Flores-Machicote, 706 F.3d at 19-20. Moreover, a mandatory minimum sentence is just that: the lowest sentence that can lawfully be imposed. A sentencing court may lawfully select a higher sentence up to the statutory maximum (which in this case is life imprisonment). See, e.g., Narváez-Soto, ___ F.3d at ___ [slip op. at 4-5, 13].

Here, the crimes of conviction are serious and the defendant was found in possession of a small arsenal. Seen in this light, the 24-month upward variance is not unconscionably steep. Together with the 96-month sentence on the underlying drug charges, it produced the same aggregate period of incarceration to which the parties had previously agreed.

In most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences. See Walker, 665 F.3d at 234. That is true here — and on this record, we cannot say

---

[3] We say "normally" because, under Federal Rule of Criminal Procedure 11(c)(1)(C), a plea agreement accepted by the district court may thereafter bind the court to a particular sentence. See, e.g., United States v. Rivera-Martínez, 665 F.3d 344, 345 (1st Cir. 2011); United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001). That is not the case here.

that the court's upward variance either brought the challenged sentence outside this universe or resulted in an indefensible outcome.  We conclude, therefore, that the challenged sentence is substantively reasonable and "sufficient, but not greater than necessary" to further the legitimate goals of sentencing.  18 U.S.C. § 3553(a).

## III.

## Conclusion

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed.**