# United States Court of Appeals
## For the First Circuit

No. 18-1952

UNITED STATES OF AMERICA,

Appellee,

v.

HUMBERTO LÓPEZ-DELGADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Andrew S. McCutcheon, Assistant Federal Public Defender, with whom Vivianne M. Marrero, Assistant Federal Public Defender Supervisor, Appeals Section, and Eric Alexander Vos, Federal Public Defender, were on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, were on brief, for appellee.

August 13, 2020

**BARRON**, <u>Circuit Judge</u>.  Humberto López Delgado ("López") challenges the procedural and substantive reasonableness of the sentence that he received for his 2017 conviction for possession of a machine gun in violation of 18 U.S.C. § 922(o) and § 924(a)(2).  We **affirm**.

## I.

On June 7, 2016, local law enforcement officers arrested López at the Luis Llorens Torres Public Housing Project in San Juan, Puerto Rico, on suspicion of involvement in a recent homicide.  It is undisputed that in a search incident to that arrest, police seized from López a loaded Glock pistol modified to shoot automatically, a loaded twenty-two-round capacity Glock magazine, a cellphone, a clear container filled with a green leafy substance, and a small cigarette believed to contain synthetic marijuana.

In a subsequent interview with the police, López stated that he carried the gun for protection.  He further stated that he had killed a man named "Sica" who lived in the same housing project and was reportedly abusive toward him.  When the police later attempted to verify this claim, they learned that a man nicknamed "Sica" was indeed shot before López's arrest, but remained alive and well after a stay in the hospital.  Upon later telling López of this fact, one law enforcement officer recounted that López

"started to cry, and his eyes became red." López reportedly stated "that he did the job wrong; that he was not able to kill him."

On June 16, 2016, a federal grand jury in the United States District Court for the District of Puerto Rico indicted López, charging him with having possessed a machine gun in violation of 18 U.S.C. § 922(o)(1) and § 924(a)(2). Shortly thereafter, López's counsel asked Dr. Carol Romey, an experienced psychologist, to evaluate his client's competency to stand trial.

Romey diagnosed López as suffering from a moderate intellectual disability and noted that in the past López had been diagnosed as suffering from bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). She concluded that López was not competent to stand trial, but she did mention the concept of "assisted competency," which might allow the proceedings to continue if he had family members who could look out for his best interests during the trial.

In response to Romey's conclusions, on January 26, 2017, López's counsel formally submitted a request to the District Court to have his client's competency to stand trial evaluated. Shortly thereafter, the District Court ordered the federal Bureau of Prisons ("BOP") to conduct a competency evaluation of López. The BOP evaluators determined that López was competent to stand trial, as they found that he was not "suffer[ing] from a severe mental disorder or defect that would preclude his ability to understand

the nature and consequences of the proceedings against him, or his capacity to assist his attorney in his own defense."

Romey evaluated López in person again in August of 2017. She stood by her previous diagnosis of intellectual disability and did not mention whether López's bipolar disorder diagnosis needed to be revised. Romey did find, however, given López's improved behavior and mental state since she last saw him, that his ADHD diagnosis ought to be reviewed and that he "should be considered competent."

On March 22, 2018, López pleaded guilty to violating 18 U.S.C. § 922(o) and § 924(a)(2), after the District Court concluded that López was competent to do so. The initial Presentence Investigation Report ("PSR") issued by the United States Office of Probation and Pretrial Services calculated a sentencing range under the United States Sentencing Guidelines ("Guidelines") of thirty-seven to forty-six months of imprisonment.

López, seeking a more lenient sentence, submitted a sentencing memorandum that detailed the difficult circumstances of his upbringing in Puerto Rico, as follows. His father was a violent addict, who, when López was four years old, pleaded guilty to sexually abusing López's older sister and was sentenced to eighteen years in prison. López and his siblings grew up in poverty, as his mother was never gainfully employed and his father

- 4 -

could not provide any financial support. Once López began attending school, his teachers soon became concerned that he suffered from behavioral and learning disabilities. López claims that a "Department of Education specialist" diagnosed him "with ADHD and learning disabilities, prescribed medication, and placed [him] in special education classes."

When López was about eight years old, the sentencing memorandum further recounted, his mother decided to move the family from Puerto Rico to New York City. Unable to find permanent housing, López and his family lived in homeless shelters for over a year and a half. During this time, López's mental health worsened, and doctors began prescribing him various medicines for ADHD and bipolar disorder. When López was fourteen years of age, a switch in medication apparently triggered a change in his behavior, causing him to become aggressive with teachers and classmates at school. As a result, López was sent to an inpatient psychiatric hospital, where he was prescribed therapy and new medications.

Upon leaving that hospital, according to the sentencing memorandum, López began using illegal drugs like marijuana and phencyclidine ("PCP"), which worsened his mental-health problems. In the ensuing years, López largely lived on the streets, with occasional visits to psychiatric wards where he was prescribed yet more bipolar and antipsychotic medication. Sometime in 2014, when

López was eighteen years old, a homeless shelter agreed to buy plane tickets for López and his mother to return to Puerto Rico. The two moved to the Luis Llorens Torres Public Housing Project where López was eventually arrested.

López asserted that, due to his traumatic childhood and the improvement in his behavior since he stopped using drugs, he should receive a forty-six-month prison sentence, with supervised release in New York. The government, though it did not challenge the factual assertions in López's memorandum, did object to the PSR, as it omitted the facts that López was originally arrested in connection with a murder and that he had told police he believed he killed a man named "Sica." It requested an eighty-four-month prison sentence.

On June 21, 2018, the District Court held a short hearing in which it postponed sentencing in order to allow the probation office to respond to the government's contentions and to provide time for further evaluation of López's mental health. At that same time, the District Court granted a request by the probation office for an order permitting it to commission a specialist to evaluate López's mental health and provide a fresh diagnosis of the disorders from which he suffered.

On July 21 and 22, 2018, the doctor selected by the probation office, José Méndez Villarrubia ("Méndez"), commenced an evaluation of López. He reviewed the BOP's evaluation of López

and Romey's second assessment of his competency. In addition, Méndez met in person with López and conducted several tests of his own to evaluate López's mental health. Méndez concurred with Romey's call to revise López's diagnoses in light of his improved behavior since terminating his drug use. Specifically finding that López did not suffer from ADHD, Méndez instead diagnosed López with antisocial personality disorder as well as several substance-abuse disorders that were in remission while López was incarcerated. He did not diagnose López with bipolar disorder. Further, Méndez concluded that López "is dangerous to society" and that "[f]ollowing society's rules, laws, and community living is a challenge for him."

The District Court held a sentencing hearing on September 20, 2018. The District Court heard testimony from law enforcement officers concerning the remarks López made about "Sica" after his arrest, as well as their corroboration of the fact that a man nicknamed "Sica" was shot in May 2016 in the same housing project where López lived. The District Court also heard from Méndez, who testified that he did not believe that López suffered from bipolar disorder but that he did present a danger to society.

The District Court determined that the PSR correctly calculated López's recommended sentencing range under the Guidelines to be thirty-seven to forty-six months of imprisonment.

Nevertheless, the District Court concluded that an upward variance was appropriate. It then imposed a ninety-six-month prison sentence, which it stated that it understood López would serve in a prison hospital, with three years of supervised release to follow. López filed a notice of appeal four days later.

## II.

On appeal, López contends that his sentence is both procedurally and substantively unreasonable. There is a two-step process for reviewing preserved sentencing challenges. First, we examine "the procedural component of the sentence for abuse of discretion." United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008). "[F]ailing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range" are all examples of procedural errors that could merit resentencing. Gall v. United States, 552 U.S. 38, 51 (2007). Once we are satisfied that "no significant procedural error" exists, id., then "we inquire whether the sentence is substantively reasonable," United States v. King, 741 F.3d 305, 308 (1st Cir. 2014) (citing Gall, 552 U.S. at 51).

**A.**

López's first set of procedural challenges concerns various factual findings that the District Court made. The government contends that he failed to preserve those challenges. But, even assuming no forfeiture, our review of the District Court's factfinding is only for clear error, see United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020), and we find none.

We begin with López's contention that the District Court clearly erred in finding that he "has a mental health record stemming from his substance abuse history, including several hospitalization[s]." López asserts that this finding is not sustainable in light of uncontested portions of his sentencing memorandum that reported that he first began receiving treatment for his mental health well before he started abusing controlled substances as a teenager. He argues that this erroneous factual finding prejudiced him, because it led the District Court to treat López's mental-health difficulties as if they were solely the consequence of his choice to use drugs when that was not the case.

We do not agree, however, that the District Court clearly erred in finding that López has "a mental health record" that stemmed from drug abuse. The record supportably shows that at least some of López's mental-health problems are attributable to his drug use, and the District Court's statement about the connection between the two -- given the use of the indefinite

article "a" to modify "mental health record" -- does not assert that all of his mental-health problems were attributable to his drug use.

Nor does this statement amount to a finding that López's drug use was not itself a response to prior mental-health problems brought about by his childhood trauma, and so any contention that it constituted a clearly erroneous finding for that reason is mistaken. Indeed, the District Court specifically commented on the traumatic childhood that López endured.

López also contends that the District Court clearly erred by finding that he did not suffer from bipolar disorder. He contends that it did so by relying solely on Méndez's conclusion that López instead suffered from antisocial personality disorder, when the record showed that he had been diagnosed with bipolar disorder during his adolescence. In support of this contention, López relies on an out-of-circuit precedent, United States v. Olhovsky, 562 F.3d 530, 549 (3d Cir. 2009).

But, as the government points out, in Olhovsky, the government's psychologist had not even met with the defendant, and his opinion was at odds with not only the diagnosis of the defendant's treating doctor but also the opinions of two other doctors that the defendant had retained, who had each provided "very specific positive reports of [the defendant's] response to therapy." Id. at 548. Here, by contrast, the District Court

- 10 -

relied on an assessment from a psychiatrist, Méndez, who had personally interviewed and tested the defendant. Moreover, Méndez's conclusion that López did not suffer from bipolar disorder is not inconsistent with the opinion of Romey, whom López had specifically hired to evaluate his competency to proceed in court. In her 2017 evaluation, she determined that López had a moderate intellectual disability, and she called for a revision to his ADHD diagnosis. But, she was silent with regard to whether López suffered from bipolar disorder. Given that the bipolar disorder diagnosis that López identifies in his sentencing memorandum was apparently offered by the doctor who treated López years prior to sentencing, when he was not yet an adult, we see no basis in the record for finding that the District Court clearly erred in relying on Méndez's contemporary assessment.

That brings us to López's third challenge to the District Court's factual findings, in which the District Court found that "this is not a typical case. This is . . . not a case of a typical felon in possession who may recidivate. This is a person who is a danger to society." Here, we understand López to argue that the District Court clearly erred because it had no basis in the record for finding López to be more dangerous than the typical prisoner.

But, the District Court's finding was adequately supported by the conclusions in Méndez's report, which detailed the results of his July 2018 psychodiagnostic tests on López, and

- 11 -

Méndez's testimony at the sentencing hearing.  In that report, he concluded that López had a minimal understanding of general society's mores and that "[h]is views of the world are mediated by violence, drugs, [and] loyalty to a subculture of drugs and criminal behaviors."  Then, in his testimony at the sentencing hearing, he stated that López was "inherently dangerous" and that he was "dangerous to society," a conclusion that Méndez said he would have reached "even if [López] didn't qualify for the antisocial personality disorder."  The District Court understood Méndez to be saying that López presented a level of danger to society that fell outside the norm, as it remarked, with respect to Méndez's assessment, that "I don't think I have ever heard anybody say about anybody that a person enjoys behaving badly."  We thus cannot say that the District Court clearly erred in finding as it did.

López's next claim of procedural error is that the District Court failed to meet its obligation under 18 U.S.C. § 3553(a) to "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis."  <u>United States</u> v. <u>Ausburn</u>, 502 F.3d 313, 329 (3d Cir. 2007).  He asserts in this regard that the District Court failed to "explain how [López's] childhood trauma factored into the sentencing calculus," even though that issue was a key part of López's argument for a more lenient sentence.

Here, our review is for abuse of discretion, see United States v. Cortés-Medina, 819 F.3d 566, 570 (1st Cir. 2016), and we find none. The District Court did not ignore López's extremely difficult childhood. In the course of discussing the circumstances it found pertinent to its sentencing decision, including López's substance-abuse history, the danger that machine guns like the one that López possessed present to the public, and Méndez's conclusion that López was a particularly dangerous individual, the District Court specifically noted that López "endured a traumatic childhood" and mentioned the anguish that López's father caused to his family. Cf. United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) ("A reviewing court should be reluctant to read too much into a district court's failure to respond explicitly to particular sentencing arguments.").

López also asserts that the District Court failed to consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), when imposing his sentence. "The only time the district court mentioned rehabilitation or treatment," López contends, "was during a boilerplate reference to 'fulfilling all the sentencing objectives.'"

Our review of this claimed error is for abuse of discretion, see United States v. Pedroza-Orengo, 817 F.3d 829, 835

- 13 -

(1st Cir. 2016), and we again find none.  The record shows that rehabilitation and the specific question whether López should be incarcerated or committed to a medical institution were squarely considered at the sentencing hearing, with the District Court going so far as to ask Méndez his opinion on whether López could receive adequate treatment in a prison hospital.

Finally, López contends that the District Court committed a procedural error by "failing to justify the extent of its upward variance" when it sentenced López to ninety-six months' imprisonment, which is fifty months in excess of the topline sentence recommended by the Guidelines.  He asserts that the District Court relied upon grounds for the variance -- including López's possession of a machine gun, the dangerousness of such guns, López's statements about killing Sica," Méndez's conclusion that López was an especially dangerous individual, and López's drug use -- that are either already accounted for in the Guidelines or are impermissible reasons for extending López's sentence.

Contrary to López's contention, the District Court did not rely on impermissible grounds in justifying the variance.  As we have explained, it was not erroneous for the District Court to rely upon Méndez's opinion that López was a danger to society. Nor do we see how the District Court erred in considering López's admitted drug use, see United States v. Díaz-Rivera, 957 F.3d 20, 27 (1st Cir. 2020) (noting that one of the factors the sentencing

- 14 -

court relied upon in imposing an upward variance was the defendant's "history of drug use"), or his statements regarding the shooting of "Sica," see 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

To be sure, when a sentencing court imposes a sentence outside of the Guidelines range, it is "obliged to explain how [the defendant's] situation was different from the ordinary situation covered by, and accounted for, in the guidelines calculation and thus why such a significant variance was justified." United States v. Ortiz-Rodríguez, 789 F.3d 15, 18 (1st Cir. 2015). In addition, "a major deviation from [the Guidelines] must 'be supported by a more significant justification than a minor one.'" United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008) (quoting Gall, 552 U.S. at 50). But, the District Court offered just such a justification by laying out in careful detail the circumstances of López's case -- including not only the particular offense itself, but also the evidence in the record bearing on the danger he posed to society, such as the alleged shooting of "Sica" -- to explain why, based on that record evidence, "a sentence above the guideline range reflects the seriousness of the offense, promotes respect for the law, protects

the public from further crimes by Mr. López, and addresses the issues of deterrence and punishment."

**B.**

López concludes by challenging the substantive reasonableness of his sentence. "The essence of appellate review for substantive reasonableness is whether the sentence is the product of 'a plausible . . . rationale and a defensible result.'" United States v. Rivera-González, 776 F.3d 45, 51 (1st Cir. 2015) (alteration in original) (quoting Martin, 520 F.3d at 96). Though we review substantive reasonableness challenges for abuse of discretion, see United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015), we owe "respectful deference . . . to the sentencing court's exercise of its informed discretion," Martin, 520 F.3d at 96.

López contends that the sentence here was substantively unreasonable because "the lower court hardly touched on Mr. López-Delgado's personal circumstances, ignoring or at the very least minimizing their severity and role in his development," resulting in a sentence that was longer than necessary. But, as we have noted, the District Court made clear it was well aware of López's extremely traumatic childhood. The District Court explained that it was ultimately more concerned with the unique danger it believed López poses to the public. As the District Court recounted, López carried a pistol modified to shoot

- 16 -

automatically, consumed copious amounts of drugs, belonged to a gang, claimed to have killed a man from his housing project, and has unusual difficulty conforming to society's rules. Thus, the District Court provided a plausible rationale for imposing a sentence that varied upward from the recommended Guidelines range.

Granted, the variance here was substantial. But, in considering this aspect of the substantive reasonableness of López's sentence, we must keep in mind that "[i]n most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences." Rivera-González, 776 F.3d at 52 (citing United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011)). Given the totality of the circumstances in this case, the District Court's chosen sentence was not outside of the "universe of reasonable sentences."[1] Id.

**III.**

We **affirm**.

---

[1] We note that, although the District Court did consider López's need for rehabilitation, as 18 U.S.C. § 3553(a)(2)(D) requires it to do, nothing in the record suggests that the District Court imposed a longer sentence than it otherwise would have issued because it thought he would "benefit from a prison treatment program." Tapia v. United States, 564 U.S. 319, 334 (2011).