# United States Court of Appeals
## For the First Circuit

No. 18-1461

UNITED STATES OF AMERICA,

Appellee,

v.

HENRY DÍAZ-RIVERA,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]


Before

Torruella, Dyk,* and Thompson,
Circuit Judges.

Alex Omar Rosa-Ambert, on brief for appellant.
Antonio L. Pérez-Alonso, Assistant United States Attorney,
with whom W. Stephen Muldrow, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, on brief for appellee.

April 20, 2020


* Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Henry Díaz-Rivera ("Díaz") pled guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of using a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Díaz now challenges the procedural and substantive reasonableness of his upwardly variant sentence.  After careful review, we affirm.

## I.  Background

Because Díaz pled guilty, we draw the relevant facts from the change-of-plea colloquy, the unchallenged portions of the Presentence Investigation Report ("PSR"), and the sentencing hearing transcript.  See United States v. Fernández-Santos, 856 F.3d 10, 14 n.1 (1st Cir. 2017).

### A.  Facts Surrounding the Offense

On March 24, 2017, Puerto Rico police officers who were patrolling an area in Toa Alta, Puerto Rico observed a vehicle parked on the side of the road.  Upon approaching the vehicle, the officers asked the driver -- later identified as Díaz -- for his driver's license and car registration, which he refused to provide.  Díaz then attempted to drive away twice but was eventually stopped.  During the intervention, an officer noticed that Díaz was holding a small, red-colored zip-lock baggie containing aluminum foil

-2-

wrapping, which was later determined to contain heroin. When Díaz exited the car, the responding officers saw that he was carrying a firearm, and they arrested him. While searching Díaz incident to the arrest, officers seized from his person a .40-caliber Glock pistol and a magazine containing a total of ten rounds of ammunition. Agents also seized: eighty-six small plastic bags containing less than fifty grams of cocaine; five cellular phones; $572 in cash; a ledger containing names and numbers; a selector switch "chip" used to modify the Glock pistol to fire automatically; forty-one rounds of .40-caliber ammunition; eight rounds of 7.62-caliber ammunition; a part of a firearm and other accessories described as a slide-back plate; 100 empty plastic vials; four red empty aluminum wrappings; and two small empty plastic zip-lock baggies.

## B. Procedural History

On March 30, 2017, a federal grand jury sitting in the District of Puerto Rico returned a six-count indictment charging Díaz with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); carrying and using a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three);

-3-

carrying and using a machinegun during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count Four); possession of a machinegun, in violation of 18 U.S.C. § 922(o) (Count Five); and being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count Six). On July 11, 2017, Díaz pled guilty to Counts One and Three.[1] The plea agreement provided for a total offense level of ten, but the parties did not stipulate as to Díaz's criminal history category. The parties agreed to recommend a sentence of imprisonment of one year for Count One to be served consecutively to the sentence imposed for Count Three. With respect to Count Three, which carries a statutory minimum term of five years of imprisonment, see 18 U.S.C. § 924(c)(1)(A)(i), the parties took into consideration that Counts Two, Four, Five, and Six were going to be dismissed and thus agreed that Díaz would recommend a sentence of no less than nine years of imprisonment and the Government would recommend eleven years of imprisonment. Díaz also agreed to waive his right of appeal if the district court imposed a sentence of twelve years of imprisonment or less,[2] and

---

[1] The remaining counts were dismissed pursuant to the plea agreement.

[2] The parties agree that the waiver of appeal provision in the plea agreement does not bar this appeal because the sentence imposed was longer than the range to which they had agreed. See

-4-

he acknowledged that the district court could, in its discretion, impose any sentence within the statutory maximum for each offense.

For Count One, the final PSR, like the plea agreement, calculated a total offense level of ten, which resulted from a base offense level of twelve and a two-level decrease for acceptance of responsibility. Díaz had two prior Puerto Rico convictions: possession of an unlicensed firearm and illegal possession of a firearm (a machinegun). Accordingly, the PSR determined that he had a criminal history category of III, which coupled with the total offense level of ten, yielded a guidelines sentencing range ("GSR") of ten to sixteen months of imprisonment. For Count Three, the PSR found that the guideline sentence was the minimum term of imprisonment required by statute, which was five years pursuant to 18 U.S.C. § 924(c)(1)(A)(i), and that the term had to run consecutively to any other term imposed.

The PSR also listed ten arrests -- all in Puerto Rico -- which did not lead to convictions.[3] Two of those arrests related to illegal drug possession, and two others related to the use

_____

United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

[3] In fact, two of the arrests led to acquittals.

-5-

and/or possession of a firearm.[4]  Additionally, the PSR described Díaz's history of substance abuse, which spanned approximately fourteen years and consisted of the use of marijuana, Percocet, Xanax, and cocaine.  Díaz filed several objections to the PSR, most of which are not relevant to this appeal.  Díaz initially objected to the inclusion of some arrests for which there were no available or translated documents that verified them, and he also objected to some arrests as too "remote to the instant offense." Díaz ultimately withdrew the objections at the sentencing hearing.

In his sentencing memorandum, Díaz acknowledged that he "ha[d] been living for several years, including the day of the arrest in the instant case, with the illness of addiction to controlled substances, including heroin and cocaine, among others."  He similarly acknowledged that he had "previous convictions at state level and arrests at state level."  Díaz

---

[4]  The ten arrests were, in chronological order: a 2004 "threats" arrest; a 2004 first-degree murder, firearm brandishing or firing, and unlicensed firearm possession arrest (acquitted); a 2004 controlled substances possession arrest; a 2005 unlicensed firearm possession and attempted first-degree murder arrest; a 2006 firearm brandishing or firing, unlawful ammunition possession, unlicensed firearm possession, and attempted first-degree murder arrest; a 2007 unlicensed firearm possession, attempted first-degree murder, and first-degree murder arrest (acquitted); a 2009 controlled substances arrest; a 2010 criminal contempt arrest; a 2015 "conjugal threats" arrest; and a 2015 resistance or obstruction of a public authority and mandatory auto insurance violation arrest.

requested a sentence of no more than 120 months of imprisonment, which, in his view, was "sufficient and not more than necessary."

## C. Sentencing

At the sentencing hearing, defense counsel re-emphasized Díaz's battle with drug addiction and requested a total sentence of 120 months of imprisonment. In accordance with the plea agreement, the Government urged the district court to sentence Díaz to a total of twelve years of imprisonment.

As to Count One, the district court adopted the PSR's calculations of the total offense level, the criminal history category, and the GSR (ten to sixteen months of imprisonment). As to Count Three, the court noted that the guideline sentence was the statutory minimum term of imprisonment of sixty months, to be served consecutively to the term of imprisonment for Count One. The court also pointed out that the firearm involved in the offense had been modified to shoot automatically. It then listed Díaz's prior arrests, reciting the PSR's explanation of their disposition.

The court then stated that it had considered the sentencing factors set forth in 18 U.S.C. § 3553(a) and referred to Díaz's age, unemployment, and history of drug use. Afterwards, it proceeded to list the items that were seized from Díaz. Finally, after considering the nature of the charges that were

dismissed pursuant to the plea agreement, the court sentenced Díaz to an upwardly variant sentence of 180 months of imprisonment (sixteen months for Count One and 164 months for Count Three). The court explained that "[b]ecause of the seriousness of the charges that ha[d] been dismissed against Mr. Díaz [under the plea agreement],[5] his extensive prior criminal record, and the need for deterrence in Puerto Rico," the sentences the parties had requested did not "reflect the seriousness of Mr. Díaz's offenses, d[id] not promote respect for the law, d[id] not protect the public from further crimes by Mr. Díaz, and d[id] not address the issues of deterrence and punishment."

After the court pronounced the sentence, defense counsel objected to it as procedurally and substantively unreasonable. He elaborated that he objected to the "findings" and "analysis" of United States v. Flores-Machicote, 706 F.3d 16 (1st Cir. 2013), and asserted that "certainty of punishment ha[s] a deterrent effect, but not the amount of time." He further asked the court to reconsider its sentence, specifically requesting that it impose the Government's requested sentence instead. He acknowledged that Díaz had "a criminal history," referring to the Puerto Rico

---

[5] The dismissed charges the district court referred to were Counts Two, Four, Five, and Six of the indictment.

arrests, and asserted that the fact that some of those cases had not been re-filed after having been dismissed on probable cause or speedy trial grounds "should not be taken against [Díaz]." The court denied Díaz's request and confirmed that "one of the things that [it] took into consideration" was the fact that the crimes charged during Díaz's arrests were either dismissed or no probable cause was found. Defense counsel again generally objected to the sentence as both procedurally and substantively unreasonable. This timely appeal followed.

## II. Discussion

Díaz challenges both the procedural and substantive reasonableness of his sentence. In sentencing appeals, appellate review is bifurcated. United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). We must first examine claims of procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Bermúdez-Meléndez, 827 F.3d 160, 163 (1st Cir. 2016) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). "If the sentence passes procedural muster, we then examine any challenge to its substantive

-9-

reasonableness." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). In making our determination, we "tak[e] account of the totality of the circumstances," Ruiz-Huertas, 792 F.3d at 226, and keep in mind that "there is no single reasonable sentence 'but, rather, a universe of reasonable sentencing outcomes,'" Miranda-Díaz, 942 F.3d at 42 (quoting United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015)). We also "proceed on the understanding that it is not our task simply to second-guess a sentencing court's considered decisions about matters squarely within its discretion." Id. A sentence is substantively reasonable if it has a "plausible sentencing rationale" and it reaches a "defensible result." Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

## A. Procedural Reasonableness

Díaz first challenges the procedural reasonableness of his sentence, arguing that, in fashioning the sentence, the district court erroneously relied on his unadjudicated prior arrests. He asserts that his upwardly variant sentence was based on the court's "impression of the nonaction of the state court in prosecuting [Díaz]" and on it "equating arrests quantity with possibility of reci[divism]." In that sense, he posits, this appeal is "no different" from that which led to our recent decision in United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019).

-10-

According to Díaz, Marrero-Pérez stands for the proposition that sentencing courts "may not factor unproven charges in their Sentencing and Judgment without finding, by a preponderance of the evidence, that the conduct underlying those charges took place."

Generally, we review procedural reasonableness challenges under "a multifaceted abuse-of-discretion standard whereby 'we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion.'" United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016) (quoting Ruiz-Huertas, 792 F.3d at 226). When a defendant does not raise a procedural objection at sentencing, however, we review for plain error. United States v. Sosa-González, 900 F.3d 1, 4 (1st Cir. 2018) (citing United States v. Reyes-Rivera, 812 F.3d 79, 85 (1st Cir. 2016)).

Díaz urges us to apply the abuse of discretion standard because he "adequately objected to the sentence's unreasonableness" below. The Government counters that Díaz waived his claim on appeal because the objections he made to the prior arrests are different from the arguments he presents on appeal. And even if the claim is not waived, the Government argues that we should review it for plain error because Díaz's objection was too general.

At the sentencing hearing, after the court imposed the sentence, Díaz objected to it as both procedurally and substantively unreasonable. With regards to the arrest record, Díaz argued that the court should not hold against him the fact that most of his Puerto Rico arrests had been dismissed and the State had chosen not to re-file the cases. Díaz did not mention Marrero-Pérez in his request for reconsideration below or explicitly claim that the court could not rely on those arrests because they did not result in convictions. Nevertheless, his argument at the sentencing hearing was sufficient to at least bring to the Government's attention the substance of the error he now asserts the court committed. Based upon Díaz's argument, the Government attempted to confirm the court's reasoning, stating the following: "Based on our interpretation of the Court's sentencing explanation, we understand that Your Honor is not taking notice of the Defendant actually committing the crimes that were charged during his arrests. That is our impression." The court responded that "the fact that those crimes were either dismissed or no probable cause was found [was] one of the things that [it] took into consideration." Based on the record, the court seems to have had the opportunity to rectify Díaz's claimed error, such that we could find his challenge to be preserved. See United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). However, we do

-12-

not dwell on this too long because Díaz does not prevail even under the more favorable abuse-of-discretion standard.

Díaz's primary quarrel with the procedural reasonableness of his sentence is that the district court improperly relied on his history of prior arrests, which had not been adjudicated, to impose an upward variance. Such reliance, he contends, is prohibited under Marrero-Pérez.

In Marrero-Pérez, we reviewed under plain error an upward departure imposed largely on the basis of prior arrests that did not result in convictions and most of which were not supported by reliable information that the underlying conduct had actually occurred. 914 F.3d at 22-24. We held that "an error occurs when a district judge relies on an arrest report, without some greater indicia of reliability that the conduct underlying the arrest took place." Id. at 24. As we recently recognized in United States v. Colón-Maldonado, No. 18-1388, 2020 WL 1081661, at *6 n.8 (1st Cir. March 6, 2020), the analysis in Marrero-Pérez also relied on U.S.S.G. § 4A1.3, which states that "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement." Id. (alteration in original) (quoting § 4A1.3(a)(3)). Because of Marrero-Pérez's reference to § 4A1.3, some of our decisions have suggested, without squarely deciding, that Marrero-Pérez does not make it plain error

-13-

to rely on bare arrest reports to impose an upward variance. See id. (citing Miranda-Díaz, 942 F.3d at 40 (finding a defendant's reliance on Marrero-Pérez to be mislaid, in part, because the defendant's sentence involved an upward variance and not a departure as in Marrero-Pérez) and United States v. Rodríguez-Reyes, 925 F.3d 558, 564–65 (1st Cir. 2019)). In Colón-Maldonado, however, we questioned whether the "departure-variance distinction" would hold up "[i]f some future case turned on it" and recognized that Marrero-Pérez "rest[s] on [the] basic principle" that "a bare arrest or charge does not prove the defendant committed the crime." Id.

Even if we assume that Marrero-Pérez applies both in the upward variance and departure contexts, we find that Díaz's reliance on that case is still inapposite. We merely decided there that an error occurs when a sentencing court "equate[s] arrest with guilt," Marrero-Pérez, 914 F.3d at 23, or when it "relies on an arrest report, without some greater indicia of reliability that the conduct underlying the arrest took place," id. at 24 (emphasis added). The Court in Marrero-Pérez was more concerned with a sentencing court's reliance on arrests alone and "other dubious inferences" that may arise from that reliance. See id. at 23.

On the other hand, Marrero-Pérez does recognize that in some cases "a reasonable person might . . . assign some weight to

-14-

a collection of arrests," id. at 22, and that "serious prior crimes and recidivist behavior" are "proper considerations at sentencing," id. at 23 (citing 18 U.S.C. § 3553(a)(1)-(2)(C)). Indeed, sentencing courts have the discretion to impose upward variances where appropriate, as long as the courts do not incur in one of the types of procedural error. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. That said, a sentencing court "must take pains to base [its] sentencing judgments upon reliable and accurate information." United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993). Thus, it may take into account "any information that has sufficient indicia of reliability." United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015). In doing so, it has "wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).

Contrary to Díaz's contention, the record does not suggest that the district court "equate[d] [his] arrest[s] with guilt." Marrero-Pérez, 914 F.3d at 23. Nor does the record reflect that the court relied solely on Díaz's arrests or placed

undue weight on either the arrests themselves or their underlying conduct. See id. at 24. The court simply recited the offenses with which Díaz had been charged and the disposition of those charges as that information appeared in the PSR. We have not assigned error "in the district court's brief recitation of procedural facts . . . adumbrated in the unchallenged [PSR], notwithstanding that those facts related to a dismissed charge." Miranda-Díaz, 942 F.3d at 41; see also Rodríguez-Reyes, 925 F.3d at 563 ("To the extent [the defendant] is arguing that the court errs in merely reciting an arrest record, he is flatly wrong." (citing United States v. Mercer, 834 F.3d 39, 49-50 (1st Cir. 2016))). A sentencing court can indeed rely on the undisputed information contained in the PSR at sentencing as "generally, a PSR bears sufficient indicia of reliability."[6] United States v. Rondón-García, 886 F.3d 14, 25 (1st Cir. 2018) (quoting United States v. Olivero, 552 F.3d 34, 40 (1st Cir. 2009)). "[N]othing in our precedent forbids a sentencing court's mere mention of the undisputed facts surrounding a dismissed charge as part of a broader assessment of the defendant's troubling trajectory

---

[6] While Díaz originally objected to the PSR's inclusion of arrests when the documents verifying them were not available or translated into English or because the arrests were too remote, he withdrew the objections at sentencing.

-16-

regarding his serial encounters with the criminal justice system."
Miranda-Díaz, 942 F.3d at 41.

Moreover, the court clarified that the disposition of the crimes charged related to the arrests was "one of the things that [it] took into consideration."  It also considered Díaz's personal characteristics -- that he was thirty-two years old, had a seventh grade education, was unemployed, and had a history of drug use; the nature of the instant offense, which included the seizure of drugs, drug paraphernalia, cash, ammunition, and a firearm modified to fire automatically; the counts being dismissed as part of the plea agreement, which the court viewed as involving serious charges; and his two prior convictions involving violations similar to the instant offense of conviction (unlicensed possession of a firearm and ammunition and illegal possession of a firearm).[7]  Thus, we cannot discern from the record that the court crafted an upwardly variant sentence based on its reliance on, or by impermissibly assigning undue weight to, an arrest record or the conduct that gave rise to it.  Accordingly, we find this part of Díaz's procedural unreasonableness challenge unavailing.

_____

[7] Marrero-Pérez recognizes that a sentencing court can vary upwardly on the basis of prior convictions.  914 F.3d at 24.

Díaz also claims that the district court erred in failing to consider "the correlation between [Díaz's] addiction and his Criminal History" as a mitigating factor. Because Díaz did not raise this argument below in objecting to the procedural reasonableness of his sentence, we review his claim for plain error. See Soto-Soto, 855 F.3d at 448. Under the plain error standard, the defendant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Rodríguez-Reyes, 925 F.3d at 563 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). Díaz's claim fails at the first step as his contention is belied by the record.

"Under § 3553(a)(1), a court determining a sentence is required to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant,'" such as drug addiction. United States v. Stile, 845 F.3d 425, 433 (1st Cir. 2017) (quoting 18 U.S.C. § 3553(a)(1)). The district court explicitly considered Díaz's history of drug abuse. It explained at sentencing that it had considered, among other characteristics, Díaz's "history of using marijuana and cocaine combined with Xanax and Percocet." It then weighed those facts against the nature and circumstances of the offense, which involved the seizure of drugs,

-18-

drug paraphernalia, a modified firearm, and ammunition. The court also considered the seriousness of the other charges in the indictment, which the parties had agreed to dismiss pursuant to the plea agreement, and the need to deter future crimes. The court's decision to assign less weight to a mitigating factor than Díaz thought it deserved is not an error, much less a plain error. See United States v. Majeroni, 784 F.3d 72, 78 (1st Cir. 2015) ("That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011))). Indeed, the district court had "the latitude to 'emphasize the nature of the crime over the mitigating factors,' and such a 'choice of emphasis . . . is not a basis for a founded claim of sentencing error.'" United States v. Rivera-Clemente, 813 F.3d 43, 53 (1st Cir. 2016) (alteration in original) (quoting United States v. Ramos, 763 F.3d 45, 58 (1st Cir. 2014)). Finally, the fact that the court recommended to Probation that Díaz "participate in the 500-hour drug treatment program that is offered by the Bureau of Prisons" further refutes Díaz's allegation that the court ignored his history of addiction. We discern no error by the district court.

## B.  Substantive Reasonableness

Finally, Díaz asserts that his 180-month sentence is substantively unreasonable.  We review this claim for abuse of discretion as Díaz preserved it by objecting both after the court pronounced the sentence and at the end of his sentencing hearing. United States v. Vázquez-Martínez, 812 F.3d 18, 26 (1st Cir. 2016) (citing United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)).

Díaz argues that the district court failed to consider all mitigating circumstances and that it improperly weighed the § 3553(a) factors, specifically, his history of drug abuse.  But as we have already explained, the district court did consider Díaz's substance abuse (and the § 3553(a) factors) in fashioning his sentence and it recommended that he participate in a treatment program during his incarceration.  We have said before that "[t]he relative weight of each [§ 3553(a)] factor will vary with the idiosyncratic circumstances of each case." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).  We will not deem the sentence unreasonable because Díaz disagrees with how the court weighed the factors.  See Clogston, 662 F.3d at 593; see also United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009) ("We will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others.").

Next, Díaz argues that the district court lacked a plausible sentencing rationale for imposing the upward variance because its reasoning was based, in part, on the incidence of crime in Puerto Rico and not on Díaz's individual circumstances. He avers that the district court imposed an upwardly variant sentence because it found "the nonthreatening process at State level . . . insufficient[ly] dissuasive." Díaz contends, consequently, that the sentence was "a direct . . . critique on the Puerto Rico Judicial system." We have held, however, that "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence" and, thus, a sentencing court may consider "the incidence and trend lines of particular types of crime in the affected community." United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013); see also United States v. Rivera-González, 776 F.3d 45, 50–51 (1st Cir. 2015) (finding that the sentencing court appropriately considered "the high incidence of violent crime in Puerto Rico"). Certainly, assessment of "community-based considerations" alone does not relieve the sentencing court of its obligation to base its sentencing determination on case- and offense-specific factors. United States v. Ortiz-Rodríguez, 789 F.3d 15, 19–20 (1st Cir. 2015) (quoting Rivera-González, 776 F.3d at 50). And indeed, the district court here did not base its sentence solely

on Puerto Rico's crime rate. Rather, as we have explained, the district court also made clear that it was taking into account all of the § 3553(a) factors, Díaz's history and characteristics, the mitigating factors Díaz proffered, the seriousness of the charges against Díaz that were dismissed pursuant to the plea agreement, Díaz's prior convictions and history of arrests, the "need for deterrence," and the fact that the parties' proposed sentences did not, in the court's view, "reflect the seriousness of Mr. Díaz's offenses, . . . promote respect for the law, . . . protect the public from further crimes by Mr. Díaz, and . . . address the issues of deterrence and punishment." Moreover, Díaz's "repeated return to criminal behavior despite earlier encounters with the criminal justice system reflected an abject failure to renounce criminality and amply justified an upwardly variant sentence." Miranda-Díaz, 942 F.3d at 43. These considerations taken together show that the rationale was tailored to the facts and circumstances of the case and, thus, that the rationale was plausible.

To the extent Díaz argues that the sentence is substantively unreasonable simply because the court varied upwardly from the sentences the parties proposed in the plea agreement and at sentencing, he is wrong. See United States v. Ubiles-Rosario, 867 F.3d 277, 294 (1st Cir. 2017) (finding that the district court is not bound by the parties' recommendations);

Bermúdez-Meléndez, 827 F.3d at 165 (finding that the district court does not need to explain why it rejected a parties' joint sentence recommendation). The court's choice to impose a sentence other than one recommended by the parties is not, in itself, error.

Finally, although Díaz seems to suggest that a lower sentence would have been sufficient but not greater than necessary, we have repeatedly held that, after the district court calculates the GSR, "sentencing becomes a judgment call," United States v. Politano, 522 F.3d 69, 73 (1st Cir. 2008) (quoting Martin, 520 F.3d at 92), and "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes," Clogston, 662 F.3d at 592 (citing Martin, 520 F.3d at 92). In this case, where Díaz, who had been formerly convicted of a felony, was found in possession of a dangerous weapon, ammunition, and controlled substances, in only the latest occurrence in a pattern of convictions involving firearms and arrests involving both firearms and controlled substances, we cannot say that the 180-month sentence imposed, though upwardly variant, falls outside the "universe of sentencing outcomes," see id. Our conclusion is strengthened by the fact that Díaz himself initially agreed to (and requested) an upwardly variant sentence, albeit of 120 months of imprisonment.

In light of this and the sentencing court's explanation of the sentence, we are satisfied that the court has articulated a plausible sentencing rationale and arrived at a defensible result, see Martin, 520 F.3d at 98.  No more is required.

### III.  <u>Conclusion</u>

For the foregoing reasons, Díaz's sentence is affirmed.

**<u>Affirmed.</u>**