# United States Court of Appeals
## For the First Circuit

Nos. 16-2141, 16-2142

UNITED STATES OF AMERICA,

Appellee,

v.

VÍCTOR VARGAS-MARTÍNEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Mary A. Davis and Tisdale & Davis, P.A., on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

October 1, 2021

**HOWARD**, **Chief Judge**.  While on bail pending trial for charges of possession with intent to distribute marihuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), defendant-appellant Víctor Vargas-Martínez ("Vargas") was once again arrested and charged in a separate case with receipt of a firearm while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n), 924(a)(2).  Vargas eventually pleaded guilty to the firearm offenses in both cases pursuant to separate plea agreements. Following his request to be sentenced for both counts of conviction in a single proceeding, the district court held a sentencing hearing in which it sentenced Vargas to consecutive upwardly variant sentences.  Vargas now challenges the procedural reasonableness of both sentences and the substantive reasonableness of one of them.  We affirm both sentences.

## I. BACKGROUND[1]

On February 16, 2015, Puerto Rico Police Department officers observed Vargas reach under a stairwell in a public housing project, retrieve a drum magazine, and hand it to another

---

[1]  Because Vargas pleaded guilty, we draw the facts from the change-of-plea colloquies, the unchallenged portions of the Presentence Investigation Reports, and the sentencing hearing transcript.  See United States v. De La Cruz-Gutiérrez, 881 F.3d 221, 223 (1st Cir. 2018).

individual who placed it in a bag. The officers detained Vargas and the other individual. Inside the bag, the officers found the drum magazine, which contained forty rounds of .40 caliber ammunition, and a .40 caliber Kel Tec rifle with an obliterated serial number, loaded with twenty-two rounds of ammunition. Under the stairwell, the officers found a lunch box that had fifty-four bags of marihuana identified with an "under armour" logo and two Ziploc bags each containing seven baggies of marihuana. The officers found twelve additional baggies of marihuana and two decks of heroin in Vargas's jacket, and $369 in his pocket.

On February 18, 2015, a grand jury sitting in the District of Puerto Rico returned an indictment charging Vargas with possession with intent to distribute marihuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Case No. 15-125).[2] On February 23, 2015, Vargas was granted bail pending trial. As part of his conditions of release, he had to wear an electronic monitoring device and was placed in home detention, under the custody of his mother.

Vargas, however, did not comply with his conditions of release. At 7:27 p.m. on July 21, 2015, he left his home without

---

[2] Vargas's confederate, later identified as Christopher Nieves-Pérez, was also charged in the same indictment.

authorization to do so. Vargas returned home, but he left again later that night. At around 9:50 p.m., Puerto Rico Police officers monitoring surveillance cameras saw Vargas acting suspiciously in the parking lot of a Puma gas station in Bayamón, Puerto Rico. They saw him reaching for his waistband for what seemed to be a firearm. Police officers were dispatched to the area to take a closer look. When they arrived at the area, the officers found Vargas in the parking lot of a Bonanza restaurant, next to the Puma gas station. He had a hammer, a loaded .40 caliber Ruger pistol, a loaded magazine, a lighter, a flashlight, and $689 on him. The officers arrested him.

Vargas asked the officers to inform his mother of his arrest. The officers went to Vargas's home, informed Vargas's mother of his situation and obtained her consent to search Vargas's room. In his room, the officers found an additional loaded firearm, a radio scanner, and a blade.

As a result of the events of July 21, 2015, Vargas was charged in a new case (Case No. 15-485) with receiving a firearm while being under indictment for a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(n), 924(a)(2). This new case was assigned to a different judge than the one presiding over Case No. 15-125.

In March 2016, Vargas pleaded guilty to the sole count in Case No. 15-485 pursuant to a plea agreement. In the plea

agreement, the parties calculated a base offense level of twelve under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(7), and a two-level reduction under § 3E1.1 for Vargas's timely acceptance of responsibility, for a total offense level of ten. The parties agreed to recommend a sentence at the lower end of the resulting applicable Guidelines Sentencing Range ("GSR") when combining the total offense level of ten with the criminal history category to be determined by the court. If Vargas's criminal history category turned out to be I, the resulting GSR would be six to twelve months and the parties would recommend six months of imprisonment.

The following month, Vargas pleaded guilty to the firearm count in Case No. 15-125 pursuant to another plea agreement. In that plea agreement, the parties noted that the guideline sentence for the offense of conviction was sixty months of imprisonment, the statutory mandatory minimum. The parties agreed to recommend that sentence to the court.

The Presentence Investigation Report ("PSR") in each case tracked the plea agreements' calculations of the GSRs. Vargas then requested that the court conduct a single sentencing hearing in which he would be sentenced for both counts of conviction. The court granted his request.

At the sentencing hearing, the court clarified that, although Vargas was being sentenced simultaneously in both cases,

he was being sentenced for "separate crimes," thus the cases were "not consolidated for purposes of relevant conduct" and the sentences would not be "concurrent." The court then calculated the Guidelines' recommended sentence for each count of conviction. In Case No. 15-485, it calculated a total offense level of ten, which resulted from a base offense level of twelve pursuant to U.S.S.G. § 2K2.1 and a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) for Vargas's timely acceptance of responsibility. The total offense level of ten, combined with a criminal history category of I, yielded a GSR of six to twelve months of imprisonment. As to Case No. 15-125, the court noted that the statute allowed for an imprisonment term between sixty months and life, and that the recommended guideline sentence was the statutory-minimum term of sixty months' imprisonment.

The court stated that it had reviewed the plea agreements, the PSRs, the parties' sentencing memoranda, had heard counsels' arguments, and had considered the 18 U.S.C. § 3553(a) sentencing factors. The court referenced Vargas's history and characteristics, including his age, education, and prospects for rehabilitation, as well as the "need to promote respect for the law, provide just punishment, and protect the community from further crimes [by Vargas]." It recounted the facts leading to the two counts of conviction and commented that it was "troubling" that while Vargas was on bail, he was "not obeying the conditions

- 6 -

of release"; rather, he was "absconding from his residence" and committing another firearm offense similar to the one for which he was already facing trial. It was "extremely troubling" to the court that Vargas "simply [did] not abide by the law." Furthermore, the court mentioned that firearm offenses such as those committed by Vargas are serious offenses not to be taken lightly, especially in light of Puerto Rico's alarming crime rate.

Prior to sentencing Vargas, the court inquired from the government whether it would move to dismiss the drug trafficking count pending in Case No. 15-125 as part of the plea agreement in that case, to which the government responded in the affirmative. The court also noted that Vargas's criminal history category of I in Case No. 15-485 was "a little bit deceiving" because, although he had a conviction in Case No. 15-125, the fact that he had not yet been sentenced translated into a lower criminal history category and, consequently, a lower GSR.

The court then acknowledged the parties' recommended sentence of sixty months in Case No. 15-125 but rejected it and imposed an upwardly variant sentence of seventy-five months' imprisonment, to be followed by five years of supervised release. In the court's view, the parties' 60-month "recommendation underrepresent[ed] the severity of the criminal conduct in [that] case and more so the lack of utter respect for the [c]ourt's conditions of release [on bail]." The court also highlighted that

- 7 -

the firearm in Case No. 15-125 was loaded with twenty-two rounds of ammunition and that, in addition, Vargas had a drum magazine with forty additional rounds of ammunition, which could have killed "a lot of people."

As to Case No. 15-485, the court also rejected the parties' recommended sentence of six months' imprisonment and imposed an upwardly variant sentence of eighteen months, to be served consecutively to the sentence in Case No. 15-125, and to be followed by three years of supervised release. The court noted the "severity of the conduct," the fact that this was "repeated conduct" as the offense was similar to that which gave rise to Case No. 15-125, and underscored that "this [second] case [was] way too soon" after the first one. In the court's view, that Vargas committed this offense just a couple of months after being released on bond in Case No. 15-125 showed his blatant disrespect for the law.

The government then requested that the drug trafficking count in Case No. 15-125 be dismissed pursuant to the plea agreement. The court granted the request. After sentencing Vargas, the court mentioned that it had considered a higher sentence because of the "troubl[ing]" nature of Vargas's conduct, but decided against it because of Vargas's "prospects for rehabilitation" due to his young age. It also explained that if the government had not dismissed the drug trafficking count in

Case No. 15-125, he would have faced "another consecutive sentence" so, in the court's opinion, Vargas "benefit[ed]" from the plea deal and the court's sentence. Vargas did not object to the sentences imposed. These consolidated appeals followed.[3]

## II. ANALYSIS

On appeal, Vargas challenges the procedural reasonableness of both sentences and the substantive reasonableness of his sentence in Case No. 15-485. We review sentencing decisions for "reasonableness, regardless of whether they fall inside or outside the applicable GSR." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). Our review is bifurcated. We first ensure that the district court has committed no significant procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020) (quoting United States v. Bermúdez-Meléndez, 827 F.3d 160, 163

---

[3] Because Vargas was not sentenced in accordance with the parties' sentencing recommendations, the waiver-of-appellate-rights provisions in his plea agreements do not bar his appeals. See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

(1st Cir. 2016)). "[I]f the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable." United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015). A sentence is substantively reasonable so long as the sentencing court has provided a "plausible sentencing rationale" and reached a "defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008) (citing United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006)).

We generally apply the deferential abuse-of-discretion standard to preserved challenges to the procedural reasonableness of a sentence.[4] United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014). However, when, as here, the defendant failed to preserve an objection to the procedural reasonableness below, the plain error standard supplants that customary standard of review. United States v. Rondón-García, 886 F.3d 14, 20 (1st Cir. 2018). Under the plain error standard, the defendant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."

---

[4] Under this standard, "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Vargas first argues that his 75-month sentence in Case No. 15-125 was the result of the district court's "misapplication" of the Guidelines. According to Vargas, because the guideline sentence for a § 924(c) conviction is sixty months, "[his] sentence should have been capped at the 60-month mandatory minimum" and the court could not consider "other adjustments" and enhancements, including "[e]nhancements for relevant conduct" in determining his sentence. In his view, because the court relied on the facts of Case No. 15-485 to "enhance his sentence beyond the called for 60 months," it misapplied the Guidelines and the sentence in Case No. 15-125 was procedurally unreasonable.

Vargas's argument is based on faulty foundations. For starters, we note that Vargas conceded both below and on appeal that the court's Guidelines calculations were correct. Furthermore, the record shows that, contrary to Vargas's contentions, the court did not apply any adjustments or enhancements (based on relevant conduct[5] or otherwise) under the Guidelines in determining the sentence for his § 924(c) conviction. Instead, the court varied upwardly from the guideline sentence

---

[5] The court clarified that it was sentencing Vargas for "separate crimes" and that the facts leading to Case No. 15-485 were not considered "relevant conduct" to the offense of conviction in Case No. 15-125.

merely based on the § 3553(a) sentencing factors. And despite Vargas's claim to the contrary, nothing prohibited the court from doing so. That the guideline sentence for a § 924(c) conviction is "the minimum term of imprisonment required by the statute" (sixty months), see U.S.S.G. § 2K2.4(b), does not mean that the court is required to impose that sentence. See United States v. Booker, 543 U.S. 220, 245 (2005) (holding that the Guidelines are no longer mandatory, but rather advisory). The court is free to select a sentence within the range allowed by the statute. Here, the penalty range for Vargas's § 924(c) conviction was between five years (or sixty months) and life imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(i). See United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011). Hence, the court could select a sentence from that range based on its weighing of the different sentencing factors, as long as the sentence was "not greater than necessary[] to achieve the purpose of sentencing." United States v. Pupo, 995 F.3d 23, 30 n.6 (1st Cir. 2021).

Vargas next argues that, under the Guidelines, any § 924(c) sentence over the statutory mandatory minimum constitutes a "departure" governed by the Guidelines rather than a "variance" and that such a departure was unwarranted here since this was a "run-of-the-mill possession in furtherance case" and "there were no factors that took the offense [of conviction] out of the heartland." According to Vargas, the court based its alleged

- 12 -

departure on Case No. 15-485, in which he had a firearm "merely stuck in his waistband . . . . for protection as he had been threatened."

We have observed that, post-United States v. Booker, 543 U.S. 220 (2005), the distinction between departures and variances is one of form rather than substance. United States v. Santini-Santiago, 846 F.3d 487, 490 (1st Cir. 2017). In any event, we have repeatedly rejected Vargas's contention that any § 924(c) sentence over the statutory mandatory minimum constitutes a departure. See United States v. Oquendo-García, 783 F.3d 54, 56 (1st Cir. 2015) (explaining that "[w]e will treat a sentence above a statutory mandatory minimum under section 924(c) as an upward variance, absent some indication in the sentencing record which persuades us that the district court intended to or in fact applied an upward departure") (internal quotation marks, brackets, and citations omitted); see also United States v. Rivera-Gonzalez, 809 F.3d 706, 710-11 (1st Cir. 2016) (rejecting same argument as contrary to our case law). Here, nothing in the record indicates that the court was applying an upward departure. To the contrary, the record reveals the court's intention to impose an upward variance based on the § 3553(a) sentencing factors. And although Vargas diminishes the seriousness of his conduct claiming that this was a "run-of-the-mill possession," the district court's different view on the seriousness of Vargas's conduct and its

- 13 -

pondering of the remaining § 3553(a) sentencing factors is not clearly or obviously erroneous. The record reflects that the court's decision to impose an above-guideline sentence in Case No. 15-125 was not just because Vargas had a firearm "merely stuck in his waistband." Rather, it reflects that the driving force behind the upward variance was Vargas's evident lack of respect for the law, the court, and his conditions of release. The court explained that it was "deeply troubled" by the fact that, shortly after being granted bail pending trial, Vargas absconded from home detention and armed himself with another loaded firearm and forty additional rounds of ammunition, which, in the court's view, spoke volumes about Vargas's characteristics and showed his utter lack of respect for the court and his conditions of release. Furthermore, mindful of Vargas's characteristics, the court also considered that the offense for which Vargas was being sentenced was a serious one, which could have gotten many people killed and thus should not be taken lightly, especially in light of Puerto Rico's alarming crime rate. See United States v. Carrasquillo-Sánchez, 9 F.4th 56, 60-61 (1st Cir. 2021) (explaining that courts may consider community-based concerns, such as the high incidence of gun violence in Puerto Rico, provided that such consideration is tied to the "individual characteristics of either the offender or the offense of conviction"). Moreover, the court noted that Vargas was benefiting from the dismissal of the drug trafficking

- 14 -

charge, which would have resulted in "another consecutive sentence." See Díaz-Rivera, 957 F.3d at 27-28 (validating the district court's consideration of the nature of the charges that were dismissed pursuant to the plea agreement in imposing an upwardly variant sentence).  The district court's explanation as to why a 15-month upward variance was necessary to accomplish the goals of sentencing, including to promote respect for the law, provide just punishment to Vargas, and protect the community from further crimes by him, was not error, plain or otherwise.

Vargas next argues that the court improperly imposed multiple punishments for the same act, i.e., his possession of the Ruger pistol.  According to Vargas, the court impermissibly "double counted th[e] same Ruger possession" and imposed three different sentences for his possession of that firearm:  a 12-month sentence "under [U.S.S.G.] § 2K2.1" in Case No. 15-485, an additional 6-month sentence in that same case, and an enhancement by fifteen months for the sentence in Case No. 15-125.  His argument lacks merit.

Vargas did not receive three sentences for the same offense.  He received two sentences, each for different offenses committed on different dates:  he received a 75-month sentence in Case No. 15-125 for his possession of the Kel Tec rifle in furtherance of a drug trafficking offense on February 16, 2015, and an 18-month sentence in Case No. 15-485 for possessing the

Ruger pistol while under indictment for a felony on July 21, 2015.[6] Although both sentences were imposed in the same proceeding, the court clearly stated that the two sentences were being imposed for "different offenses" in separate cases.

In sentencing Vargas for his possession of a firearm in furtherance of drug trafficking in Case No. 15-125, the court took into consideration, among other factors indicative of Vargas's characteristics, that he had violated his release conditions by possessing another firearm -- the Ruger pistol. This, however, did not constitute impermissible double counting. "Double counting concerns usually involve the use of a single factor more than once to calculate the [applicable GSR.]" United States v. Maisonet-González, 785 F.3d 757, 764 (1st Cir. 2015) (citing United States v. Fiume, 708 F.3d 59, 61 (1st Cir. 2013)). Here, the court did not use the Ruger possession even once in determining the guideline sentence.

Likewise, the court did not engage in double counting when sentencing Vargas in Case No. 15-485 as it did not use Vargas's possession of the Ruger pistol twice in calculating the applicable GSR. Although the court did consider the nature and circumstances of the offense in fashioning the sentence after

---

[6] Nor did Vargas receive two sentences in Case No. 15-485. He received a single sentence that varied upwardly (by six months) from the high end of the applicable GSR (which was twelve months).

calculating the GSR, this does not constitute double counting. See id. at 764 (explaining that an "overlap between the Guidelines and other sentencing factors enumerated in 18 U.S.C. § 3553(a)" -- such as when the court "factor[s] [a] defendant's prior criminal history into his base offense level and then consider[s] their particular gravity as a factor in determining how stringent his sentence should be" -- "d[oes] not constitute double counting and is neither surprising nor impermissible" (citation omitted)); see also United States v. Cruzado-Laureano, 527 F.3d 231, 236 (1st Cir. 2008) ("The court's consideration of appellant's attitude toward the crime, as well as the serious nature of the offense, was appropriate under both the Guidelines and 18 U.S.C. § 3553(a) . . . . "). And to the extent that Vargas's plaint can be construed as challenging the court's consideration of the same § 3553(a) sentencing factors in fashioning both sentences, it fares no better. Here, the court imposed two separate sentences for two different offenses in two separate cases. The court had the duty to consider all the § 3553(a) sentencing factors in determining each of the sentences. See Díaz-Rivera, 957 F.3d at 25 (explaining that failing to consider the § 3553(a) sentencing factors is a procedural error).

Building on his previous argument, Vargas argues that the district court erred in imposing consecutive sentences. He acknowledges that 18 U.S.C. § 924(c)(1)(D)(ii) requires that his

sentence for his § 924(c) conviction in Case No. 15-125 be consecutive to any other term of imprisonment imposed on him but argues that such requirement only applies to the "60-month mandatory minimum." He insists that "the 15-month bump beyond that mandatory consecutive 60 months should have been concurrent to the [sentence in Case No. 15-485] because it was for the same exact conduct."

Although Vargas conveniently breaks up his 75-month sentence for his § 924(c) conviction into "60-month mandatory minimum" plus "15-month bump," the truth is he received a single 75-month sentence for his conviction. The statute requires that the entire sentence imposed for his § 924(c) conviction run consecutive to any other term of imprisonment imposed on him. See 18 U.S.C. § 924(c)(1)(D)(ii) (stating that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person"). There is nothing unreasonable about imposing a consecutive sentence when the consecutive nature is required by law. Furthermore, we reiterate that this sentence was imposed for his possession of a Kel Tec rifle in furtherance of a drug trafficking offense (Case No. 15-125), which was a different offense than his possession of a Ruger pistol while under indictment (Case No. 15-485).

- 18 -

Finally, Vargas contends that his sentence in Case No. 15-485 is substantively unreasonable because the district court relied exclusively on the elements of the offense to justify a sentence above the GSR. According to Vargas, "the court did not provide any reason" for imposing a variant sentence other than "he was on bond [and] should not be carrying another firearm," which were the elements of the offense. Because the guideline sentence already accounted for those facts, his argument goes, the court could not use them to justify a variance absent an explanation as to why his situation was different from the ordinary situation covered by the Guidelines.[7]

---

[7] In his brief, Vargas refers to this argument about the adequacy of the court's explanation for its chosen sentence as both procedural and substantive. In the past, we have characterized similar arguments under our precedent "as either a [claim of] procedural error or a challenge to the substantive reasonableness of the sentence." United States v. García-Pérez, 9 F.4th 48, 52 n.1 (1st Cir. 2021) (alteration in original) (quoting United States v. Crespo-Ríos, 787 F.3d 34, 37 n.3 (1st Cir. 2015)). Vargas's claim of procedural error is not preserved. And although it is clear that his argument for a 6-month sentence preserved his claim on appeal that his 18-month sentence was unreasonably long, see Holguin-Hernandez v. United States, ___ U.S. ___, 140 S. Ct. 762, 766 (2020), it is much less clear whether it was sufficient to preserve any other substantive-reasonableness argument, see id. at 767 (Alito, J., concurring) (clarifying that the Court was not deciding "what is sufficient to preserve any 'particular' substantive-reasonableness argument"). Nevertheless, because his challenge fails even if we adopt the substantive framing and assume favorably to him that his claim was preserved, we need not conclusively decide the proper framing or whether his claim was preserved.

Preserved challenges to the substantive reasonableness of criminal sentences engender abuse-of-discretion review. See Holguin-Hernandez v. United States, ___ U.S. ___, 140 S. Ct. 762, 766 (2020); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020). We approach such challenges mindful that "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (citing Martin, 520 F.3d at 92). Our task is "to determine whether the [challenged] sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020).

The hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result. Clogston, 662 F.3d at 593. Where, as here, a variant sentence is imposed, the district court's explanation for the deviation "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender," and "must justify a variance of the magnitude in question." Martin, 520 F.3d at 91. This requirement, however, "does not require the court to be precise to the point of pedantry." Del Valle-Rodríguez, 761 F.3d at 177. It is against this backdrop that we turn to the defendant's contention.

Vargas is right that a sentencing court may not exclusively rely on the elements of the offense to support an

- 20 -

upward variance. See United States v. García-Pérez, 9 F.4th 48, 53 (1st Cir. 2021) (explaining that the court's reliance on the defendant's "possession of a machinegun cannot suffice as an adequate explanation for its [upwardly] varian[t]" sentence for his 18 U.S.C. § 922(o) conviction); see also United States v. Rivera-Santiago, 919 F.3d 82, 85 (1st Cir. 2019) (explaining that "[w]hen a § 3553(a) consideration is already accounted for in the guideline range, a sentencing court 'must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation'" (quoting United States v. Guzman-Fernandez, 824 F.3d 173, 177 (1st Cir. 2016))). However, contrary to Vargas's contentions, the district court did not rely exclusively on the elements of Vargas's offense of conviction in imposing an upwardly variant sentence. The record makes manifest that the court premised Vargas's sentence on a panoply of facts to which it alluded in open court immediately before imposing the sentence, and which were relevant to the nature and circumstances of the offense and to Vargas's characteristics. The court emphasized not only the severity of Vargas's conduct and that such conduct was similar to the one for which he was awaiting trial in Case No. 15-125, but also the closeness in time between his release on bail in Case No. 15-125 and his new criminal conduct. The court expressed its concern that "this [second] case [was] way too soon"

- 21 -

after the first one. Furthermore, the court noted that, in addition to the loaded firearm and multiple rounds of ammunitions seized from Vargas when he was arrested near the Bonanza restaurant, the officers had found an additional loaded firearm, a radio scanner, and a blade when they searched his bedroom on the day of his arrest. In the court's view, this showed Vargas's blatant disrespect for the law and that he was "an individual who simply does not abide by the law." In addition, the court considered that Vargas's criminal history category of I was "a little bit deceiving" because, although he had already been convicted in Case No. 15-125, the fact that he had not yet been sentenced translated into a lower criminal history category and, thus, a lower GSR. See Del Valle-Rodríguez, 761 F.3d at 176 ("[A]n upward variance may be justified by . . . a finding that the defendant's criminal history score underrepresents the gravity of his past conduct . . . ."). Upon considering these circumstances, as well as the remaining § 3553(a) sentencing factors, the court determined that the GSR did not properly reflect the seriousness of the offense, did not necessarily promote respect for the law or protect the community from further crimes by Vargas. The explanation provided by the court was adequate to support its variant sentence. Because the district court gave a plausible explanation and reached a defensible result in light of the

§ 3553(a) sentencing factors, Vargas's sentence in Case No. 15-458 is substantively reasonable.

### III. CONCLUSION

For the foregoing reasons, Vargas's sentences are **<u>affirmed</u>**.